# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

SYLVIA SMITH, DARLENE         )
LOFTISS, BRENDA HAMMERS,      )
and DEBBIE PORTER,            )
                             )
      Plaintiffs,         )
                             )
vs.                          )    Case No. CIV-07-328-F
                             )
NWM-OKLAHOMA, LLC, INC.,      )
d/b/a LA Weight Loss Centers, )
                             )
      Defendant.          )

## ORDER

Before the court is the Motion for Summary Judgment of Defendant, NWM-Oklahoma, LLC d/b/a LA Weight Loss Centers (doc. no. 32). Plaintiffs have responded, defendant has replied, and the motion is ready for determination.

Background

Plaintiffs, Sylvia Smith ("Smith"), Darlene Loftiss ("Loftiss"), Brenda Hammers ("Hammers") and Debbie Porter ("Porter"), commenced this action against defendant, NWM-Oklahoma, LLC, Inc. d/b/a LA Weight Loss Centers, on March 16, 2007. At all pertinent times, defendant operated several local LA Weight Loss franchises, including one in Edmond, Oklahoma. LA Weight Loss is a weight reduction program for individuals who desire to control their weight through dietary management. The program includes customized menus, consultations and dietary supplements. Plaintiffs Smith and Loftiss were customers of defendant. Plaintiffs Hammers and Porter were employees of defendant.

In their complaint, plaintiffs allege that Suzanna Reed ("Reed"), a supervisory employee of defendant, and other employees of defendant, through a listening device[1] placed in a private room, secretly listened to plaintiffs' confidential and highly personal conversations. All plaintiffs allege a claim against defendant under federal law for violation of the federal wiretap statute, 18 U.S.C. § 2510, *et seq*. They also allege claims under Oklahoma law for invasion of privacy and intentional infliction of emotional distress.[2]

Plaintiff Porter additionally alleges a claim under Oklahoma law for wrongful discharge. In the complaint, plaintiff Porter alleges that she was terminated by defendant in retaliation for her refusal to lie as to certain facts and circumstances relating to defendant listening in on plaintiffs' private conversations.

Although not specifically alleged in the complaint, according to and without objection from defendant, plaintiff Hammers also alleges a claim under Oklahoma law for wrongful discharge. Plaintiff Hammers alleges that she was terminated by defendant in retaliation for her stated objection to the use of the baby monitor for listening in on plaintiffs' private conversations and her continued efforts to resolve the issue.

---

[1] Although not identified in the complaint, the Joint Status Report and Discovery Plan for the case and the evidence presented for summary judgment purposes reveal that the listening device was a "baby monitor."

[2] In its summary judgment motion, defendant represents that because none of plaintiff Porter's conversations were intercepted, she does not join in the federal claim or the state law claims of invasion of privacy and intentional infliction of emotional distress. Plaintiff in response states that she only asserts a claim of wrongful discharge. The court construes plaintiff's response as a motion to dismiss the federal claim and state law claims of invasion of privacy and intentional infliction of emotional distress under Rule 41(a)(2), Fed. R. Civ. P. The court grants the motion and dismisses the federal claim and the state law claims of invasion of privacy and intentional infliction of emotional distress alleged by plaintiff Porter without prejudice.

In its motion, defendant seeks summary judgment as to all of the claims alleged by plaintiffs.

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Relevant Facts

Viewing the evidence in a light most favorable to plaintiffs, the relevant facts are as follows. Defendant hired plaintiff Hammers as a sales consultant in June 2005. In October 2005, plaintiff Hammers was promoted to assistant manager. That same month, defendant hired plaintiff Porter as a sales consultant. Plaintiff Hammers served as acting manager for a time before Suzanna Reed came on as

manager.  When Ms. Reed became manager of the Edmond facility, she supervised plaintiffs Hammers and Porter.

In August of 2006, plaintiff Smith went to the LA Weight Loss Center for an initial consultation regarding the weight loss program.  Plaintiff Hammers conducted the initial consultation.  Prior to the consultation, plaintiff Hammers was advised by Ms. Reed that the consultation would be monitored through the use of a baby monitor.  Plaintiff Hammers objected to the use of the baby monitor. Plaintiff Hammers was thereafter advised by Ms. Reed that the adaptor was not on the baby monitor and it would not work without the adaptor.

Plaintiff Smith's initial consultation lasted approximately two hours.  After discussing private and sensitive weight loss issues, plaintiff Hammers presented plaintiff Smith with a one-page enrollment agreement.  Plaintiff Hammers paraphrased the contents of the document for plaintiff Smith.  After plaintiff Smith agreed to enroll in the weight loss program, both plaintiff Smith and plaintiff Hammers executed the enrollment agreement.  The last sentence of the third paragraph, entitled LA Weight Loss Diet Plan, stated in pertinent part "I acknowledge that my counseling sessions may be monitored for quality assurance purposes."  *See*, Exhibit 5, defendant's motion.  Plaintiff Smith did not remember seeing the quoted statement in the enrollment agreement.

Subsequently, one of plaintiff Hammers' co-employees, Elizabeth Swonger, made some comments to plaintiff Hammers, which suggested she overheard the consultation with plaintiff Smith.  One of the comments related to a statement Ms. Smith had made regarding her husband.  Ms. Reed, who was present at the time of the comment, smiled when plaintiff Hammers looked at her.

Before voicing her objection to the use of the baby monitor, plaintiff Hammers had never "bucked" Ms. Reed or questioned the practices of defendant.

-4-

According to plaintiff Hammers, "things went downhill" after the baby monitor incident. *See*, Exhibit 13, plaintiffs' response. Plaintiff Hammers noticed Ms. Reed and Ms. Swonger began to have private conversations in Ms. Reed's office behind closed doors.

In September 2006, plaintiff Hammers was verbally reprimanded and written up by Sharene Smith, area manager for defendant, for purportedly selling a dietary supplement to a medically ineligible client. Plaintiff Hammers was also demoted from assistant manager to sales consultant. Ms. Reed was present at the meeting advising of the demotion. During that meeting, plaintiff Hammers advised Ms. Smith about Ms. Reed's use of the baby monitor for listening in on consultations and stated that such use was a violation of the law. Prior to her discipline, plaintiff Hammers had never been "written up" or criticized for her job performance.

Shortly after the meeting, plaintiff Hammers sent an e-mail to Ms. Smith voicing a concern for her job and requesting a transfer to another location. In her e-mail, plaintiff Hammers stated that she hoped her hours would not be affected "thru retaliation." *See*, Exhibit 14, plaintiffs' response. Ms. Smith responded to plaintiff Hammers advising that she would discuss the transfer. She also advised that there would be no retaliation. Approximately one month later, plaintiff Hammers was terminated by Sharene Smith for purportedly selling a dietary supplement to a medically ineligible client.

The use of a baby monitor to monitor consultations with customers occurred for less than one month. During that period, plaintiff Loftiss came in for a consultation but she did not sign up for the weight loss program. Ms. Swonger conducted plaintiff Loftiss' consultation. Ms. Swonger had consented to the use of the baby monitor by Ms. Reed. She permitted the monitoring because she

believed she needed help from Ms. Reed with the consultations. Plaintiff Loftiss, however, did not consent to the monitoring of the consultation.

In August 2006, plaintiff Porter received a verbal warning from Ms. Reed for purportedly failing to follow company policy. Sometime after plaintiff Hammers was terminated, plaintiff Porter was asked to say that there was a sign posted at the Edmond facility about the monitoring of consultations. Plaintiff Porter advised that she would not commit perjury in court. In December 2006, plaintiff Porter was terminated for purported violations of company policy.

Discussion

     I.    Federal Wiretap Claims

The federal wiretap statute, 18 U.S.C. § 2510, *et seq*., "provides a civil remedy against any person who 'intentionally intercepts' another person's wire, oral, or electronic communications." Abraham v. County of Greenville, 237 F.3d 386, 389 (4th Cir. 2001) (citing 18 U.S.C. § 2520(a) and 18 U.S.C. § 2511(1)(a)). Plaintiffs Loftiss, Smith and Hammers allege that defendant violated the federal wiretap statute, specifically § 2511(1)(a), by intentionally intercepting oral communications of plaintiffs during Loftiss' and Smith's initial consultations. Defendant contends that it is entitled to summary judgment as to plaintiffs' claims because the oral communications were intercepted upon consent of plaintiffs and were intercepted without criminal or tortious purpose. Section 2511(2)(d) of Title 18 of the United States Code, which sets forth the consent exception, provides in pertinent part:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where . . . one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious

act in violation of the Constitution or laws of the United States or of
any State.

18 U.S.C. § 2511(2)(d).

Plaintiffs argue that the consent exception does not apply because plaintiffs
did not consent to the interceptions and the interceptions at issue were done for the
purpose of committing a criminal or tortious act.

    A.    <u>Plaintiff Loftiss</u>

Although plaintiffs have presented evidence that plaintiff Loftiss did not give
prior consent to the interception of oral communications during her initial
consultation, plaintiffs have failed to present evidence to raise a genuine issue of
material fact that Ms. Swonger, who consulted with plaintiff Loftiss, likewise did
not give prior consent.  The evidence in the record before the court reveals that Ms.
Swonger had been advised that initial consultations were to be monitored through
the use of the baby monitor, she knew that the baby monitor was in the consultation
room and she consented to the use of the baby monitor to listen to her initial
consultations.  Therefore, the evidence in the record establishes that one of the
parties to plaintiff Loftiss' initial consultation gave prior consent to the interception
of oral communications made during that consultation.

Plaintiffs, however, also argue that the consent exception does not apply
because the interception of the oral communications was done "for the purpose of
committing any criminal or tortious act in violation of the Constitution or laws of
the United States or of any State." 18 U.S.C. § 2511(2)(d).  According to plaintiffs,
the oral communications were intercepted for the purpose of committing both
criminal and tortious acts under the laws of Oklahoma.  Specifically, plaintiffs
contend that the subject interception constitutes a felony under the Security of

Communications Act ("SCA"), 13 O.S. 2001 § 176.1, *et seq*., Oklahoma's wiretap statute.  Also, plaintiffs argue that the interception constitutes an invasion of privacy under Oklahoma common law.

The court, however, finds that plaintiffs have failed to show a violation of the Oklahoma wiretap statute because, with language similar to that found in the federal wiretap statute, the Oklahoma wiretap statute provides that it is not unlawful to intercept an oral communication "when one of the parties to the communication has given prior consent to such interception unless the communication is intercepted for the purpose of committing any criminal act." *See*, 13 O.S. 2001 § 176.4(5).  The evidence in this case establishes prior consent of the interception by Ms. Swonger.  In addition, plaintiffs have not pointed to any other criminal act which defendant purportedly committed by intercepting the oral communications.

Even if plaintiffs could establish that defendant's interception of oral communications violated Oklahoma's wiretap statute, that violation would not preclude application of the consent exception.  "Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception-its intended use-was criminal or tortious." Sussman v. American Broadcasting Companies, Inc., 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (quoting Payne v. Norwest Corp., 911 F. Supp. 1299, 1304 (D. Mont. 1995), *aff'd in part and rev'd in part*, 113 F.3d 1079 (9th Cir. 1997)).  *See also*, By-Prod Corp. v. Armen-Berry Co., 668 F.2d 956, 960 (7th Cir. 1982) ("it is the use of the interception with the intent to harm rather than the fact of interception that is critical to liability").  "Where the taping is legal, but it is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies.  Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." Sussman, 186 F.3d at 1202-3.  Here, plaintiffs have

only argued that defendant's interception violated the SCA.  Violation of that statute by itself, however, does not demonstrate that defendant acted with a criminal purpose.  *Id.*; Payne, 911 F. Supp. at 1303-4.  Plaintiffs have failed to show that purpose of the interception was to facilitate further impropriety.

Plaintiffs have also argued that the interception was for a tortious purpose because it constitutes an invasion of privacy under Oklahoma law.  Where the alleged unlawful interception may be an invasion of privacy under state law, courts have required plaintiffs to prove that defendant had a tortious purpose to invade another's privacy, independent of an intent to simply intercept the communication. *See*, Sussman, 186 F.3d at 1203, U.S. v. Phillips, 540 F.2d 319, 327, fn. 5 (8th Cir. 1976); *see also*, Roberts v. Americable Intern. Inc., 883 F. Supp. 499, 503 (E.D. Cal. 1995) ("the 'tortious purpose' referenced by the federal permission/exception must be a tortious purpose *other than* the mere intent to surreptitiously record an oral conversation.") (emphasis in original).  Here, plaintiffs have not presented any evidence of a tortious purpose, independent of an intent by defendant to intercept oral communications.

Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact for trial as to defendant's alleged criminal or tortious purpose in intercepting the oral communications.  The evidence in the record is that the interception of the oral communications occurred for the purpose of training its sales consultants.  Indeed, plaintiffs admit as much in their briefing.  *See*, plaintiffs' response, p. 15 ("there is no doubt that Ms. Loftiss' conversation was intercepted and her right of privacy invaded to help LA Weight Loss with its marketing efforts by enhancing its employees' sales pitch.")  The court finds no evidence in the record that defendant intercepted the oral communications "for the *purpose* of committing [a] criminal or tortious act in violation of the . . . laws . . . of any State,"

18 U.S.C. §2511(d)(2) (emphasis added).  Consequently, the court concludes that the consent exception applies and defendant's motion for summary judgment as to plaintiff Loftiss' federal wiretap claim must be granted.

B.    Plaintiffs Smith and Hammers

As to the claims asserted by plaintiffs Smith and Hammers under the federal wiretap statute, the court finds that these plaintiffs have presented sufficient evidence to raise a genuine issue of material fact as to whether plaintiffs Smith and Hammers gave "prior consent" to the interception of oral communications during plaintiff Smith's initial consultation.  The evidence presented by plaintiffs shows that plaintiff Hammers specifically objected to the monitoring of plaintiff Smith's initial consultation prior to it being held.  Although plaintiff Smith executed an enrollment agreement which contained a statement acknowledging the monitoring of counseling sessions, plaintiffs have presented evidence indicating that the enrollment agreement was not presented to plaintiff Smith for signature until the end of the initial consultation, after she had already revealed private matters concerning her personal life, which would obviously be too late for her to consent to the interception she alleges had already occurred.  Based upon this evidence, the court concludes that a genuine issue of material fact exists as to whether the consent exception of § 2511 applies.  Therefore, the court concludes that defendant is not entitled to summary judgment as to plaintiffs' federal wiretap statute claims on the ground that the consent exception applies.

II.    State Law Claims of Invasion of Privacy and Intentional Infliction of Emotional Distress

In the complaint, plaintiffs Loftiss, Smith and Hammers have alleged a claim for invasion of privacy.  The Restatement (Second) of Torts, § 652A sets forth four distinct categories of invasion of privacy.  They are (1) unreasonable intrusion upon

the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public. Oklahoma has recognized the tort of invasion of privacy in all four categories. <u>McCormack v. Oklahoma Publishing Company</u>, 613 P.2d 737, 740 (Okla. 1980). In the case at bar, plaintiffs rely upon the first category. In order to prevail on their claims, plaintiffs must establish a nonconsensual intrusion which was highly offensive to a reasonable person. <u>Gilmore v. Enogex</u>, 878 P.2d 360, 366 (Okla. 1994). Defendant, in its motion, contends that it is entitled to summary judgment on plaintiffs' invasion of privacy claims because plaintiffs consented to the monitoring of the initial consultations. In addition, defendant contends that plaintiffs did not have a reasonable expectation of privacy while in defendant's facility.

Oklahoma also recognizes the tort of intentional infliction of emotional distress. <u>Eddy v. Brown,</u> 715 P.2d 74, 76 (Okla. 1986). The tort is governed by the narrow standards of the <u>Restatement (Second) of Torts</u>, § 46. In order to prevail on their claims of intentional infliction of emotional distress, plaintiffs must establish: (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) plaintiffs actually experienced emotional distress; and (4) the emotional distress was severe. <u>Daemi v. Church's Fried Chicken, Inc.</u>, 931 F.2d 1379, 1391 (10th Cir. 1991). Whether defendant's conduct is sufficient to satisfy the requirement of extreme and outrageous conduct is a question, in the first instance, for the court. <u>Eddy</u>, 715 P.2d at 76. Only when reasonable minds would differ in an assessment of the issue may the intentional infliction of emotional distress claim be submitted to the jury. *Id*.

A.      Plaintiff Loftiss

As to plaintiff Loftiss' invasion of privacy claim, the court finds that summary judgment is not appropriate.  The evidence in the record shows that plaintiff Loftiss did not consent to the use of the baby monitor to listen in on her initial consultation.  The court also finds that the record is not sufficient to determine as a matter of law that the intrusion would not be highly offensive to a reasonable person.  The court notes that defendant, in its briefing, quotes a portion of the court's order in Williams v. City of Tulsa, 393 F.Supp.2d 1124, 1129 (N.D. Okla. 2005), discussing the law in regard to an employee's expectation of privacy in the workplace, to support summary judgment as to all of plaintiffs' invasion of privacy claims.  The passage from Williams which defendants quote related, however, to the Fourth Amendment claims alleged by the plaintiffs in that case. Defendant's reliance on the quoted passage is misplaced.  The authority cited by defendant does not support a finding as a matter of law that the intrusions at issue would not be highly offensive to a reasonable person.

As to plaintiff Loftiss' claim of intentional infliction of emotional distress, the court finds that summary judgment is appropriate.  Plaintiff Loftiss, in the response brief, concedes that she did not suffer "severe" emotional distress and therefore she cannot establish all of the elements of an intentional infliction of emotional distress claim.  In light of plaintiff Loftiss' concession, the court finds that defendant is entitled to summary judgment on the intentional infliction of emotional distress claim.

B.      Plaintiffs Smith and Hammers

The court finds that summary judgment is not appropriate as to plaintiffs Smith and Hammers' invasion of privacy claims.  The evidence in the record raises a genuine issue of material fact as to whether plaintiffs Smith and Hammers gave

prior consent to the use of the baby monitor to listen in on plaintiff Smith's initial consultation. In addition, as previously stated, the court finds that the record is not sufficient to determine as a matter of law that the intrusion would not be highly offensive to a reasonable person.

As to plaintiff Hammers' intentional infliction of emotional distress claim, the court finds that summary judgment is appropriate. Plaintiff Hammers, in the response brief, confesses defendant's motion as to her intentional infliction of emotional distress claim. The court accordingly finds that defendant is entitled to summary judgment on plaintiff Hammers' intentional infliction of emotional distress claim.

Turning to plaintiff Smith's intentional infliction of emotional distress claim, the court, upon review of the evidence, is not inclined to grant summary judgment. The court recognizes that it must determine in the first instance whether defendant's conduct was extreme and outrageous. The court, however, would prefer to address that question after having the benefit of hearing, at trial, all of plaintiff Smith's evidence in support of the claim. If the evidence at trial satisfies the court that a rational jury could find that defendant's interception of plaintiff Smith's conversations was beyond all bounds of decency, the claim will go to the jury. The court declines, at least at this point, to determine that this case is not one in which the recitation of all of the facts to an average member of the community would arouse his resentment against defendant, and lead him to exclaim, "Outrageous." Comment d of § 46, <u>Restatement (Second) of Torts</u>.

III.    <u>State Law Claims of Wrongful Discharge</u>

Plaintiffs Porter and Hammers allege claims against defendant for wrongful discharge based upon the public-policy exception to the at-will employment rule. These claims are referred to as <u>Burk</u> tort claims, as the Oklahoma Supreme Court

first recognized them in <u>Burk v. K-Mart Corp.</u>, 770 P.2d 24 (Okla. 1989).  The <u>Burk</u> tort is "tightly circumscribed" and is available only when "an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with clear and compelling public policy." *Id*. at 29.  The clear and compelling public policy on which a plaintiff relies must be articulated by state constitutional, statutory, regulatory or decisional law. *Id*.

Plaintiff Porter alleges that she was terminated in retaliation for refusing to lie in court about the existence of a sign at the Edmond facility advising the customers that their consultations would be monitored.  Plaintiff Hammers asserts that she was terminated in retaliation for her objection to the use of the baby monitor to listen in on customers' initial consultations and for her continuing efforts to seek a resolution of that issue.

Defendant, in its motion, contends that summary judgment is appropriate as to plaintiffs' claims because they have failed to identify any law other than the federal wiretap statute as the public policy supporting their claims.  In addition, defendant contends that plaintiffs have failed to support their allegations that they were terminated in violation of public policy.

A.    <u>Plaintiff Porter</u>

In support of her wrongful discharge claim, plaintiff Porter relies, in part, on the decisions of the Oklahoma Supreme Court in <u>McGehee v. Florafax International, Inc.</u>, 776 P.2d 852 (Okla. 1989) and the Tenth Circuit in <u>White v. American Airlines, Inc.</u>, 915 F.2d 1414 (10th Cir. 1990) (applying Oklahoma law). These decisions recognize that an employee's discharge for the refusal to commit perjury can be the basis for a <u>Burk</u> tort claim.  Defendant, in its reply, does not challenge that plaintiff contentions on this point.  The court concludes that defendant is not entitled to summary judgment on the basis of plaintiff Porter's

failure to identify clear and compelling Oklahoma public policy to support her <u>Burk</u> claim.

Defendant also contends that it is entitled to summary judgment because plaintiff Porter has failed to establish her allegations that she was terminated in violation of Oklahoma public policy.  "To warrant submission of [her] wrongful discharge claim to a jury, [] plaintiff must present sufficient evidence from which a jury could reasonably conclude that the discharge was significantly motivated by the plaintiff's refusal to violate the law."  <u>Mason v. Oklahoma Turnpike Authority</u>, 115 F.3d 1442, 1452 (Okla. 1997) (citing <u>White</u>, 915 F.2d at 1421).  Upon careful review of the record, the court finds that plaintiff Porter has failed to present evidence sufficient to raise a genuine issue of material fact as to whether her discharge was significantly motivated by her refusal to commit perjury.  Defendant has presented evidence through Sharene Smith's affidavit that plaintiff Porter was terminated in December 2006 for violations of company policy.  According to Ms. Smith's affidavit, she was the representative of defendant responsible for plaintiff Porter's termination.  Plaintiff Porter has not presented any evidence to raise a genuine issue of material fact that the proffered legitimate non-retaliatory reason for plaintiff's discharge is unworthy of credence.  Plaintiff Porter has simply argued in her response brief that defendant has not produced any documentation whatsoever regarding her termination.  The lack of documentation regarding plaintiff's termination, in and of itself, does not raise a genuine issue of material fact as whether plaintiff Porter's termination was significantly motivated by her refusal to commit perjury.

The only evidence that plaintiff Porter has presented in support of her wrongful discharge claim is deposition testimony of the conversation wherein she stated that she refused to commit perjury.  The testimony does not indicate exactly

when the conversation occurred.   It appears from the testimony that the conversation occurred sometime after plaintiff Hammers' termination.  The record evidence indicates that plaintiff Hammers' termination occurred in October of 2006.  Plaintiff Porter's termination occurred in December of 2006.  The court concludes that the evidence presented by plaintiff Porter is not sufficient to establish a nexus between the refusal to commit perjury and plaintiff's termination.

In the absence of evidence raising a genuine issue of material fact as to whether plaintiff Porter's termination was significantly motivated by retaliation for her refusal to commit perjury, the court finds that defendant is entitled to summary judgment as to plaintiff Porter's wrongful discharge claim.

    B.    <u>Plaintiff Hammers</u>

Plaintiff Hammers relies upon the Oklahoma wiretap statute, which precludes the interception of oral communications without prior consent of one of the parties to the communication, as the basis of her wrongful discharge claim.  Recently, in <u>Darrow v. Integris Health, Inc.</u>, 176 P.3d 1204 (Okla. 2008), the Oklahoma Supreme Court stated:

> Oklahoma law protects both internal and external reporting of whistleblowers who rely on an employer's public-policy violation to support an actionable employment termination.  Protecting purely private and proprietary interests of an employer is not a cognizable predicate for this tort.  Employees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further the public good by unmasking these breaches should be protected from an employer's retaliation.

> * * * *

> [W]e caution that today's pronouncement is not to be understood so broadly as to warrant a conclusion that any employee allegation of illegal or unsafe employer's activity will withstand scrutiny in light of

> *Burk*.  The pervasive public interest implicated here by the alleged violations of the public health, safety, and welfare is a prominent consideration for protecting these complaints by the breach of public policy shield.

Darrow, 176 P.3d at 1215-1216.

Defendant contends that <u>Darrow</u> would not support a finding that the SCA sets forth clear and compelling public policy for application of the <u>Burk</u> claim. Defendant specifically points out that it is not unlawful under the SCA to intercept oral communications if consent is given.

The court need not decide whether plaintiff Hammers' alleged complaints and reports of defendant's purported violation of the SCA would be protected from defendant's retaliation under <u>Burk</u>.  As is the case with plaintiff Porter, the court, upon careful review of the record, finds that plaintiff Hammers has failed to present sufficient evidence from which a jury could reasonably conclude that her discharge was significantly motivated by the plaintiff's objection to the use of the baby monitor to listen in on customers' initial consultations.  *See*, <u>Mason</u>, 115 F.3d at 1452.  According to Sharene Smith's affidavit, submitted by defendant, Ms. Smith was responsible for plaintiff Hammers' termination.  Ms. Smith states in her affidavit that plaintiff Hammers was terminated for selling a dietary supplement to a medically ineligible client.  Plaintiff Hammers does not present any evidence raising a genuine issue of material fact as to whether defendant's proffered legitimate non-retaliatory reason for the discharge is false.  The court finds that plaintiff Hammers has not presented any other evidence to raise a genuine issue of material fact as to whether defendant's stated reason for the adverse employment decision is unworthy of credence.

-17-

In support of her claim, plaintiff Hammers points to a conversation prior to her termination that she had with co-worker, Sharon Blosier, wherein Ms. Blosier told plaintiff Hammers that there was a discussion and conversation about the potential for a lawsuit concerning the baby monitors. She also relies upon her e-mail to Ms. Smith voicing concerns over her job and Ms. Smith's response to the e-mail.[3] She further cites to her testimony that after the baby monitor incident, she felt that something just "wasn't right" because Ms. Reed and Ms. Swonger held private conversations in Ms. Reed's office behind closed doors. She also testified that she had never "bucked" Ms. Reed prior to the issue of the baby monitors and that "things started going downhill for me" after that. *See*, plaintiff's response, Ex. 15. The court concludes, however, that this evidence, even when viewed in a light most favorable to plaintiff, is not sufficient to raise a genuine issue of material fact that her discharge was significantly motivated by her objection to the use of the baby monitor.

As to the conversation with Ms. Blosier, there is no indication that the discussion and conversation referred to by plaintiff Hammers involved Ms. Smith, who terminated plaintiff, or that Ms. Smith was aware of the discussion or conversation or was even aware of the potential for a lawsuit involving the baby monitor at the time Ms. Smith terminated plaintiff Hammers' employment.

Although plaintiff Hammers, in her e-mail to Ms. Smith, voiced concern about her job and retaliation and a request for transfer, Ms. Smith specifically

---

[3] In reply, defendant objects to the plaintiff Hammers' reliance upon the conversation with Ms. Blosier and the e-mail to and from Ms. Smith on the grounds that the evidence constitutes inadmissible hearsay. The court need not decide whether the evidence constitutes inadmissible hearsay in that the evidence, as discussed below, does not raise a genuine issue of material fact as to whether plaintiff Hammers' discharge was significantly motivated by her objection and reports of defendant's use of a baby monitor to listen in on customers' consultations.

responded that she would discuss a transfer and there would be no retaliation. Ms. Smith advised plaintiff Hammers to inform her immediately of any retaliation. The court finds that this evidence does not support a retaliatory motive on the part of Ms. Smith in terminating plaintiff Hammers.

As to the private conversations between Ms. Reed and Ms. Swonger, plaintiff Hammers presents no evidence regarding the content of these conversations. There is no evidence that the conversations concerned plaintiff Hammers or her employment. Plaintiff Hammers also has not presented any evidence linking Ms. Reed or Ms. Swonger to the ultimate decision to terminate plaintiff Hammers' employment.

Plaintiff Hammers also testified that things went downhill after she voiced her objection to Ms. Reed about the use of the baby monitor. Again, Ms. Hammers does not present any evidence that Ms. Reed was involved in the decision to terminate her employment. In addition, she does not present any evidence as to what "things" went downhill. Although Ms. Hammers was written up and demoted in September of 2006, the evidence shows that Sharene Smith was the individual who was responsible for imposition of that discipline.

The court concludes that the record fails to raise a genuine issue of material fact as to whether plaintiff Hammers' discharge was significantly motivated by her objection to, and her reports of, defendant's listening in on customers' consultations by way of a baby monitor. The court therefore concludes that defendant is entitled to summary judgment as to plaintiff Hammers' wrongful discharge claim.

Conclusion

Based upon the foregoing, the Motion for Summary Judgment of Defendant, NWM-Oklahoma, LLC d/b/a LA Weight Loss Centers, filed May 1, 2008 (doc. no. 32), is **GRANTED in part** and **DENIED in part**.

-19-

IT IS ORDERED that defendant is granted summary judgment under Rule 56, Fed. R.Civ. P., as to plaintiff Darlene Loftiss' federal claim for violation of 18 U.S.C. § 2510, *et seq.*, as to plaintiff Darlene Loftiss' state law claim for intentional infliction of emotional distress, as to plaintiff Debbie Porter's state law claim for wrongful discharge, and as to plaintiff Brenda Hammers' state law claims for intentional infliction of emotional distress and wrongful discharge.

IT IS ORDERED that plaintiff Debbie Porter's federal law claim for violation of 18 U.S.C. § 2510, *et seq.* and state law claims for invasion of privacy and intentional infliction of emotional distress are **DISMISSED WITHOUT PREJUDICE** under Rule 41(a)(2), Fed. R. Civ. P.

IT IS FURTHER ORDERED that defendant is denied summary judgment under Rule 56, Fed.R.Civ.P., and a jury trial shall proceed as to plaintiff Darlene Loftiss' state law claim for invasion of privacy, plaintiff Sylvia Smith's federal law claim for violation of 18 U.S.C. § 2510, *et seq.*, plaintiff Smith's state law claims for invasion of privacy and intentional infliction of emotional distress, plaintiff Brenda Hammers' federal law claim for violation of 18 U.S.C. § 2510, *et seq.*, and plaintiff Brenda Hammers' state law claim for invasion of privacy.

Dated this 8th day of July, 2008.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-0328p009 rev (pub).wpd

-20-